UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――

SVETLANA KHANIMOVA,
*individually and as parent and natural guardian of Y.N.*,
      Plaintiff,

 -v-

DAVID C. BANKS, *in his official capacity as Chancellor of the New York City Department of Education*, et al.,
      Defendants.

23-CV-4124 (JPO)

OPINION AND ORDER

―――――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

 Plaintiff Svetlana Khanimova, both individually and as the parent and natural guardian of minor Y.N., brings this action against the New York City Department of Education ("the Department") and David Banks, in his official capacity as Chancellor of the Department, pursuant to the Individuals with Disabilities Education Act ("the IDEA"), 20 U.S.C. § 1400 *et seq.*, and Article 89 of the New York State Education Law, N.Y. Educ. Law § 4401 *et seq.* Khanimova seeks reversal of an administrative decision of a State Review Officer ("SRO") denying funding for one-on-one nursing services and nursing transportation for her minor daughter, Y.N.

 Before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court denies Khanimova's motion for summary judgment and grants Defendants' cross-motion for summary judgment.

1

I.      Background

   A.      Legal Background

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education" and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(B). States that provide a free appropriate public education ("FAPE") to all children who have disabilities are eligible for federal funding under the IDEA. *See id.* § 1412(a)(1)(A); *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005). Because New York receives federal funds under the IDEA, it must comply with the IDEA's requirements. *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 123 (2d Cir. 1998).

The IDEA requires that a state provide each disabled child with an individualized education program ("IEP"). *See* 20 U.S.C. § 1414(d)(1)(A). The IEP is "[t]he 'centerpiece' of the IDEA's education delivery system." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). The IEP is "a written statement that 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'" *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 507-08 (2d Cir. 2006) (quoting *Honig*, 484 U.S. at 311). New York law requires local Committees on Special Education ("CSEs") to develop IEPs for disabled children. N.Y. Educ. Law § 4402(1)(b)(1); *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012).

A parent who believes that his or her disabled child has been denied a FAPE under the IDEA may unilaterally place that child in a private school and then seek reimbursement from the school district. 20 U.S.C. § 1412(a)(10)(C)(ii); *Hardison v. Bd. of Educ.*, 773 F.3d 372, 376 (2d

Cir. 2014). To determine whether a parent is entitled to reimbursement, a court applies the three-pronged *Burlington/Carter* test, "which looks to (1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs; and (3) a consideration of the equities." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014). To receive reimbursement, the parent must file a due process complaint challenging the appropriateness of the school district's recommendation. A hearing on this complaint is held before an impartial hearing officer ("IHO"). N.Y. Educ. Law § 4404(1). The IHO's decision may be appealed to a state review officer, *see* 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(2), and the decision of the SRO may be challenged in state or federal court, 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3)(a).

### B. Factual Background and Procedural History

Plaintiff Khanimova is the parent and guardian of student Y.N., who suffers from a brain injury that causes severe impairments in her cognition, language, vision, memory, and speech. (ECF No. 16-1 at 12.) Y.N. is non-verbal and non-ambulatory, has profound hearing loss, and is legally blind. (*Id.*) She has also been diagnosed with infantile spasm seizure disorder and cerebral palsy. (*Id.* at 12-13.)

In January 2022, Y.N. began attending the International Institute for the Brain ("iBrain"). A CSE convened to develop Y.N.'s IEP for the 2022-23 school year and determined that Y.N. was eligible for special education as a student with multiple disabilities, and the CSE recommended placement in a state-approved nonpublic school day program. (*Id.* at 13.) In June 2022, Khanimova informed the district that she was rejecting the CSE's recommended program and that Y.N. would be enrolled at iBrain for the 2022-23 school year. (*Id.*)

On July 6, 2022, Khanimova alleged in a due process complaint notice that the district failed to offer Y.N. a FAPE for the 2022-23 school year. (*Id.*) Khanimova and the district proceeded to a hearing before an IHO. (*Id.* at 14.) On October 20, 2022, the IHO concluded in his Findings of Fact and Decision that the district had failed to offer Y.N. a FAPE for the 2022-23 school year, that iBrain was an appropriate unilateral placement for Y.N., and that equitable considerations weighed in favor of Khanimova's request for tuition reimbursement and the provision of transportation to and from the school. (*Id.*; *see also id.* at 22-23, 28-29.) The IHO then ordered the district to fund the "Student's placement at the Private School for the 2022-2023 school year in the amount of $279,596.80," and to fund "Student's special transportation" as set forth in a specific agreement. (*Id.* at 29.)

Khanimova appealed the IHO's decision to the SRO to the extent that it denied public funding for one-on-one nursing services for Y.N. (ECF No. 16-1 at 11.) The SRO concluded that Khanimova's request for review was untimely. A request for review of an IHO's decision must be personally served within forty days of the date of the IHO's decision, meaning Khanimova's request for review had to be served by November 29, 2022. *See* 8 N.Y.C.R.R. § 279.4(a). But Khanimova served the request on the district on December 2, 2022, three days after that forty-day period expired. (ECF No. 16-1 at 15.) The SRO therefore dismissed Khanimova's appeal as untimely. (*Id.* at 16.)

On May 17, 2023, Khanimova filed this action challenging the SRO decision and seeking an award of one-on-one nursing services for Y.N.

**II.      Legal Standard**

"IDEA actions generally are resolved on summary judgment." *J.W. v. N.Y.C. Dep't of Educ.*, 95 F. Supp. 3d 592, 600 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). Unlike typical summary judgment motions, however, in an IDEA action, "the procedure is in

4

substance an appeal from an administrative determination, not a summary judgment [motion].” *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012) (internal quotation marks and citation omitted). The inquiry focuses on "whether the administrative record, together with any additional evidence, establishes that there has been compliance with the IDEA's processes and that the child's educational needs have been appropriately addressed." *D.C. ex rel. E.B. v. N.Y.C. Dep't of Educ.*, 950 F. Supp. 2d 494, 498 n.1 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

"While the district court must base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 243 (2d Cir. 2015) (internal quotation marks and citation omitted). The "'due weight' [that courts] ordinarily must give to the state administrative proceedings," however, "is not implicated with respect to . . . issue[s] of law." *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997).

**III.   Discussion**

The Court declines to disturb the SRO's determination that Khanimova's appeal from the IHO's decision was untimely, and as a result, the Court cannot grant Khanimova the relief she seeks. "To initiate an appeal from the IHO's decision to the SRO, state regulations require the petitioning party to effectuate timely personal service of a verified petition upon the respondent." *B.C. ex rel. B.M. v. Pine Plains Cent. Sch. Dist.*, 971 F. Supp. 2d 356, 360 (S.D.N.Y. 2013). Specifically, state regulations require a party seeking review to "personally serve a notice of request for review and a request for review upon the opposing party (respondent) within 40 days after the date of the decision of the impartial hearing officer sought to be reviewed." 8 N.Y.C.R.R. § 279.4(a). "If a petitioner fails to timely initiate an appeal to the SRO, the reasons

5

for failure to timely seek review must be set forth in the petition, and '[t]he SRO, in his or her sole discretion, may excuse a failure to timely serve or file a petition for review . . . for good cause shown.'" *B.C.*, 971 F. Supp. 2d at 361 (quoting 8 N.Y.C.R.R. § 279.13).

"A plaintiff's failure to exhaust administrative remedies under the IDEA 'deprives the Court of subject matter jurisdiction.'" *Id.* at 364 (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008)). "Courts in this Circuit have held that—absent good cause shown—a party who fails to make a timely appeal to the SRO, or fails to timely serve the respondent, has failed to satisfy the exhaustion requirement." *Id.* at 365 (collecting cases). Thus, there is a "line of precedent in this Circuit holding that a plaintiff's procedural errors, such as failure to timely serve or file a petition for SRO review, will be deemed a failure to exhaust administrative remedies." *Id.* (citing *R.S. v. Bedford Cent. Sch. Dist.*, 899 F. Supp. 2d 285, 291 (S.D.N.Y. 2012)).

Here, Khanimova failed to serve the request for review within the required forty-day period. The IHO's decision was rendered on October 20, 2022 (ECF No. 16-1 at 29), and as a result, the deadline to file any appeal was November 29, 2022. But Khanimova served her request for review on December 2, 2022, three days after the forty-day window expired. (*Id*. at 15.) "Therefore, absent some exception, [Plaintiff] has failed to exhaust her administrative challenge" to the IHO's decision, which "ordinarily deprive[s] federal courts of subject matter jurisdiction over [Plaintiff's] IDEA claims." *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18-CV-6964, 2019 WL 4600870, at *10, 13 (S.D.N.Y. Sept. 21, 2019).

Still, "applicable New York administrative law allows for an SRO's decision to be overturned if 'made in violation of lawful procedure[,] affected by an error of law[,] arbitrary and capricious[,] or an abuse of discretion." *R.S.*, 899 F. Supp. 2d at 290 (quoting N.Y. C.P.L.R.

§ 7803(3)); *see also Avaras*, 2019 WL 4600870, at *10 ("If an SRO dismisses a petition for review as untimely, courts will uphold the decision unless that decision was 'arbitrary and capricious.'")  "When determining whether a SRO's decision was 'arbitrary and capricious,' courts must determine whether the decision 'was based on [] consideration of [] relevant factors and whether there has been a clear error of judgment." *Avaras*, 2019 WL 4600870, at *11 (quoting *State of N.Y. Dep't of Soc. Servs. v. Shalala*, 21 F.3d 485, 492 (2d Cir. 1994)).

Khanimova contends that the SRO's decision was arbitrary and capricious because it failed to account for the fact that Defendants waited until November 30, 2022, one day after the forty-day timeframe to file an appeal expired, to inform Khanimova that they would not be funding Y.N.'s one-on-one nurse or transportation nurse. (ECF No. 15 at 11-12, 14-15.)  Absent that notification, Khanimova maintains, a "fair reading" of the IHO's decision suggested that one-on-one nursing services and a transportation nurse would be reimbursed. (*Id.* at 14.)

The SRO gave persuasive reasoning for rejecting Khanimova's argument.  As an initial matter, Khanimova gives little to no detail about the communication she allegedly received on November 30, 2022.  Regardless, the IHO's decision itself put Khanimova on notice that the district was declining to fund the student's one-on-one nursing services, as the decision stated that it was ordering the reimbursement for a specific amount for base tuition and for special transportation, neither of which includes the one-on-one nursing services Khanimova seeks.  Indeed, the enrollment contract between iBrain and Khanimova states that base tuition is $175,000 and that supplemental tuition is $104,596.80, which sum to $279,596.80, the amount that the IHO awarded Khanimova for enrollment at iBrain. (ECF No. 16-8 at 18-19.)  And even Khanimova's own counsel clarified at the hearing in front of the IHO that "the one-to-one nurse is not" "included in the tuition" for iBrain. (ECF No. 16-12 at 67.)  Nor could Khanimova have

7

understood the award of "special transportation" to include one-on-one nursing services, as the IHO order itself discusses the special transportation as simply covering transportation to and from Y.N.'s home and the school pursuant to a specific agreement. (ECF No. 16-1 at 28.) Moreover, Khanimova makes no such argument that she understood the "special transportation" category to include one-on-one nursing services.

Khanimova also suggests that because the IHO discussed Y.N.'s one-on-one nursing services at iBrain and assistance from a nurse for transportation in his decision, the most natural reading of that decision covered funding for such services. (ECF No. 15 at 14-15.) But the IHO's discussion of those services was in the portion in which the IHO descriptively recounted the evidence presented by the parties (ECF No. 16-1 at 25), and the IHO's listing of reimbursable costs at the end of his decision is the relevant portion of his decision (*id.* at 29).

As a result, Khanimova was given sufficient notice that the amount the IHO awarded did not include one-on-one nursing services, and Khanimova has not shown that the SRO's decision dismissing her appeal as untimely was arbitrary or capricious. "Because [the] SRO . . . has addressed Plaintiff's good-cause arguments and proffered his reasoning for rejecting it, this Court is unfortunately not in a position to overturn his determination," despite the possibly "*de minimis* nature of the delay." *See Avaras*, 2019 WL 4600870, at *11 ("[T]he arbitrary and capricious standard mandates considerable deference to SROs".). The Court therefore does not have subject-matter jurisdiction due to Khanimova's failure to file a timely appeal. Accordingly, the Court grants Defendants' cross-motion for summary judgment and declines to reach the merits of Khanimova's appeal.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED and Defendants' cross-motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motions at ECF Numbers 14 and 17, enter judgment in favor of Defendants, and close this case.

SO ORDERED.

Dated: May 9, 2024
      New York, New York

_____
J. PAUL OETKEN
United States District Judge